# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-00488-SCT

*GERALD M. WARREN, HANCOCK BANK AND*
*GANNETT RIVER STATES PUBLISHING*
*COMPANY, INC. d/b/a THE HATTIESBURG*
*AMERICAN*

*v.*

*NEVON JOHNSTON d/b/a JOHNSTON*
*PROPERTIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2003 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS LYNN CARPENTER, JR. |
| | DOUGLAS BAGWELL |
| | RICHARD F. YARBOROUGH, JR. |
| | JAMES W. CRAIG |
| | LUTHER T. MUNFORD |
| | MARK DAVID FIJMAN |
| | CHRISTOPHER ROYCE SHAW |
| ATTORNEYS FOR APPELLEE: | JERRY A. EVANS |
| | LOWE ARTHUR HEWITT |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/11/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This dispute over the validity of a foreclosure sale requires us to decide whether a notice of foreclosure is a "legal notice" within the scope of a statute which unambiguously states in pertinent part:

A newspaper otherwise qualified under this section which is published in a municipality whose corporate limits encompass territory in more than one (1) county shall be qualified to publish legal notices for any county a portion of whose territory is included within the municipality, irrespective of the actual physical location within the municipality of the principal public business office of the newspaper.

Miss. Code Ann. § 13-3-31(4) (Rev. 2002).

## BACKGROUND FACTS AND PROCEEDINGS

¶2. Nevon Johnston d/b/a Johnston Properties defaulted on a promissory note due to Hancock Bank (the "Bank"). The note was secured by deeds of trust on certain real property ("Property") located in Lamar County. The trustee of the deeds of trust, Gerald M. Warren, instituted foreclosure of the Property by placing notices in *The Hattiesburg American*, a newspaper published in the Forrest County portion of Hattiesburg. The municipal boundaries of Hattiesburg also reach into Lamar County. The foreclosure sale took place on August 7, 2002.

¶3. Claiming that the foreclosure sale was invalid, Johnston filed suit against Hancock Bank, Warren, and the purchasers of the Property. The chancellor, persuaded that the foreclosure notices should have been placed in a newspaper located in Lamar County,[1] set aside the foreclosure sale. Warren, joined by the Bank and *The Hattiesburg American*,[2] filed a motion for interlocutory appeal which we granted. *See* M.R.A.P. 5.

---

[1]It is undisputed that, at the time Warren commenced the foreclosure proceedings, *The Lamar Times/Times of South Mississippi* (*"The Times"*) was located in Lamar County.

[2]The chancellor allowed Gannett River States Publishing Company, Inc., d/b/a *The Hattiesburg American* to intervene.

## DISCUSSION

**I.    Does Mississippi Code Annotated Section 13-3-31(4) permit publication in *The Hattiesburg American* of a foreclosure of property located in Lamar County?**

¶4.    Where, as here, we are required to interpret statutory provisions, our standard of review is de novo. *Sanders v. Chamblee*, 819 So. 2d 1275, 1277 (Miss. 2002); *Roberts v. New Albany Separate Sch. Dist.*, 813 So. 2d 729, 730-31 (Miss. 2002); *Carrington v. Methodist Med. Ctr., Inc.*, 740 So. 2d 827, 829 (Miss.1999).

*Section 13-3-31*

¶5.    Because our decision turns on our interpretation of Miss. Code Ann. § 13-3-31(4), we again set forth the language selected by our Legislature for inclusion therein:

> A newspaper otherwise qualified under this section which is published in a municipality whose corporate limits encompass territory in more than one (1) county shall be qualified to publish legal notices for any county a portion of whose territory is included within the municipality, irrespective of the actual physical location within the municipality of the principal public business office of the newspaper.

¶6.    If this statute applies to foreclosure proceedings, then it clearly, unquestionably and unambiguously permitted the notice of foreclosure to be published in *The Hattiesburg American*.

¶7.    According to the statute's clear provisions, *The Hattiesburg American* is "qualified to publish legal notices" for Lamar County if it meets the following requirements:

1.    It must be "otherwise qualified under [§13-3-31];"

2.    Hattiesburg's corporate limits must "encompass territory in more than one county;" and

3. Lamar County must be a "county a portion of whose territory is included within [Hattiesburg]."

¶8. Finding no dispute in this case that these three statutory requirements are met, we must conclude that *The Hattiesburg American* is "qualified to publish legal notices" for Lamar County. Our conclusion thus requires us to address whether publication of notice of a foreclosure sale is publication of "legal notice." Since simple logic demands that it is, and since neither the appellant urge a different conclusion, we find that notice of a foreclosure sale is a "legal notice."

¶9. Thus, every requirement and provision of Section 13-3-31(4) has been met, leading us to two inescapable conclusions: Section 13-3-31(4) applies to the notice of foreclosure, and the notice of foreclosure published in *The Hattiesburg American* was valid and authorized by the statute.

¶10. We find further support for our conclusions in the first subsection of the statute which provides: "Whenever it is required by law that any summons, order, citation, advertisement or other legal notice shall be published in a newspaper in this state, it shall mean . . . ."Miss. Code Ann. §13-3-31(1) (Rev. 2002). This language seems to us difficult to misunderstand. Although notice of a foreclosure sale may not be a "summons, order [or] citation," it is clearly an "advertisement" for the sale of property. Indeed, section 89-1-55 – which squarely addresses foreclosure proceedings – mandates that the "sale of said lands shall be **advertised** . . . ." (Miss. Code Ann. § 89-1-55 (emphasis added). We find it equally clear, although unnecessary to our decision, that the notice of a foreclosure sale is a "legal notice."

*Section 89-1-55*

4

¶11. Johnston relies on the provisions of Miss. Code Ann. § 89-1-55(1999), which provides in relevant part that: "Sale of said lands shall be advertised for three consecutive weeks preceding such sale, in a newspaper **published in the county**, or if none is published, in some paper having general circulation therein, . . ."(emphasis added). This statute, Johnston urges, is an unambiguous mandate that the advertisement of the foreclosure appear in a newspaper published in Lamar County. However, the statute requires that the notice be "published in the county," and the provisions of § 13-3-31(4) clearly qualify publication in *The Hattiesburg American* as publication in Lamar County. Stated another way, *The Hattiesburg American* is deemed to be published in Lamar County pursuant to the clear provisions of §13-3-31(4).

¶12. It seems to us illogical to say that a clear, unambiguous right granted by Miss. Code Ann. § 13-3-34(4), may be ignored because the right is not repeated or spelled out in § 89-1-55. The Mississippi Code is filled with clear, unambiguous statutes which nevertheless are explained and defined in other statutes. For instance, Miss. Code Ann. § 97-17-1(1) provides that "**[a]ny person** who willfully and maliciously sets fire . . . shall be guilty of arson in the first degree, and . . . sentenced to . . . not less than five (5) nor more than twenty (20) years . . . ."(emphasis added). There is nothing ambiguous about the term, "any person." Yet, we know that youth offenders who qualify under the specific provisions of another sentencing statute are subject to the jurisdiction of the youth court and are not included in the "any person" provision of § 97-17-1(1).

¶13. In his order invalidating the foreclosure sale, the Chancellor referenced *Cook v. Taylor*, 200 Miss. 381, 27 So. 2d 404, 407 (1946), in which this Court held that even though the land in question actually lay in two counties, publication in only the county where the majority of

5

the land was located was inadequate, and therefore the subsequent foreclosure sale was rendered void. By doing so, this Court upheld the language of § 89-1-55 by stating that publication in only the one county would have been proper only if no paper existed in the other county. *Id.*

¶14. Unlike a city which includes land from two counties, land which lies in two different counties is not addressed by a specific statute. Thus, *Cook* is of no value in our analysis of this case.

*The 2004 amendment to §13-3-31*

¶15. In its 2004 regular session, the Legislature amended 13-3-31(4) to specifically include "foreclosure sale notices as described in Section 89-1-55." Miss. Code Ann. § 13-3-31. If prior to its amendment, Section 13-3-31(4) already provided clear authority for publication of notice of the foreclosure sale in *The Hattiesburg American*, why then (one might ask) would the Legislature amend the statute to specifically say the statute applies to foreclosure sales? In other words, if, as we hold today, it already applied to foreclosures, what was the need for an amendment?

¶16. We are required by our Constitution to simply interpret statutes according to their clear meaning. We do not believe we are required or authorized to speculate why the Legislature does what it does. One given to speculation, however, might find the following possibility quite plausible:

> The amendment was enacted as a result of this very case. In his lawsuit filed in February, 2003, Johnson raises – for the first time in history – an argument that § 13-3-34(4) does not apply to notice of a foreclosure sale. The Legislature, learning of the position taken by Johnson in the lawsuit, and wishing to make it

6

clear that the statute does in fact apply to notice of a foreclosure sale, enacts the amendment at its very next opportunity.

We find this speculative scenario is at least as plausible as the idea that – out of a clear, blue sky – the Legislature decided for the first time to extend the provisions of the statute to foreclosure sales. And this, at the exact same time a lawsuit is pending wherein the issue had been raised. To paraphrase Yogi Berra, this would be too much of a coincidence to be a coincidence.

¶17. Without speculation, and simply reading the clear words of § 13-3-34(4), prior to its amendment, we hold that the publication in *The Hattiesburg American* was proper.

> **II.**      **Even if Mississippi Code Annotated Section 13-3-31(4) is properly construed to permit publication of the Lamar County foreclosure notices in *The Hattiesburg American*, should it also be used to construe the language in the deed of trust in this case?**

¶18. Johnson argues that, regardless of the provisions of the statute, the language in the deed of trust required publication in the *Times*. Each of the subject deeds of trust included the following language:

> Sale of the property shall be advertised for three consecutive weeks preceding the sale in a newspaper published in the county where the property is situated, or if none is so published, then in some newspaper having general circulation therein, and by posting a notice for the same time at the courthouse of the same county. . . .

¶19. The exact same language is employed in the deed of trust as was selected by the Legislature in § 89-1-55, which requires that the sale be advertised **"in a newspaper published in the county. . . ."** This, of course, brings us right back to the question of what it means for a newspaper to be "published in the county," and again we find that §13-3-31(4) qualifies *The Hattiesburg American* as a newspaper published in Lamar County.

## CONCLUSION

¶20.    For the aforementioned reasons,    this Court reverses the chancellor's denial of the motion for summary judgment filed by Warren and joined by the Bank and *The Hattiesburg American*, as intervenor**.**    This Court also reverses the chancellor's decision to set aside the foreclosure sale.    This case is remanded for further proceedings consistent with this opinion.

¶21.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY AND CARLSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**